UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ATTAIN, LLC,                                    :
                                                :
                    Plaintiff,                  :
                                                :
           v.                                   :        No. 5:17-cv-03499
                                                :
WORKDAY, INC., WORKDAY LIMITED,                 :
and ROBERT STEELE,                              :
                                                :
                    Defendants.                 :
_____

**O P I N I O N**

**Defendants' Motion to Transfer Venue, ECF No. 13 – Granted**

**Joseph F. Leeson, Jr.**                                    **June 4, 2018**
**United States District Judge**

## I.      Introduction

Plaintiff Attain, LLC, has filed a Complaint against Defendants Workday, Inc., Workday,

Limited (collectively, "Workday"), and Robert Steele, alleging that they have been engaged in a

campaign of interference, disparagement, and defamation against Attain. In response, Defendants

have filed a Motion to Transfer Venue under 28 U.S.C. § 1404(a), seeking to transfer this action

to the United States District Court for the Northern District of California pursuant to a forum-

selection clause in a contract entered into by Attain and Workday in May 2015. Because, for the

reasons set forth below, Attain's claims fall within the scope of the forum-selection clause,

Defendants' Motion is granted.

## II.     Background

## A.      Factual Background

Attain's Complaint alleges the following facts.

Attain provides consulting services primarily to government agencies and private entities, such as higher education institutions and academic hospitals. Compl. ¶ 8. Among other things, Attain assists its clients with strategic data projects, data infrastructure management, adoption of new technologies, software as a service ("SaaS"), and serves as a general, or "Prime," contractor for work related to these services. *Id.*

Workday is a provider of cloud-based software products that assist with financial and human resources management. Compl. ¶ 9. Workday has a network of services, software, and payroll partners ("Partners") who must apply to and enter into alliance agreements with Workday in order to support Workday's products. *Id.* These Partners are designated as Certified Partners or Advisory Partners. Compl. ¶ 10. Certified Partners work directly on the implementation of Workday products, whereas Advisory Partners are mainly responsible for soliciting new customers for Workday products and managing projects which involve Workday products. *Id.*

In May 2015, Attain and Workday entered into an alliance agreement (the "Alliance Agreement"), under which Attain would be an Advisory Partner to Workday, providing consulting services to customers of Workday's products. Compl. ¶ 11. The Alliance Agreement contained a provision whereby either Workday or Attain could terminate, without cause, the Agreement at any time upon ninety days' prior written notice to the other party. Compl. ¶ 12. Pursuant to the Agreement, Attain sourced customers and provided consulting and project management services to a number of educational institutions and teaching and research hospitals that used Workday products. Compl. ¶ 13. Attain alleges upon information and belief that the customers Attain brought to Workday generated more revenue for Workday than the customers brought in by any other Advisory Partner. *Id.* In addition, Workday asked Attain to step in and replace some of Workday's other Partners mid-project on ventures in which education clients

were unsatisfied with those Partners' services; Attain provided these services at a discount. Compl. ¶ 14.

Independent of its work as a Workday Advisory Partner, Attain also served, and continues to serve, as the Prime contractor that leads in the implementation of SaaS or other strategic data projects for a number of institutions. Compl. ¶ 15.

Workday is known for imposing exacting, at times onerous, requirements on its Partners. Compl. ¶ 16. Despite Attain's success as an Advisory Partner, Workday continually attempted to micromanage Attain's business. *Id.* This caused tension in the relationship between Workday and Attain, but Attain continued to serve as an Advisory Partner with great success. Compl. ¶ 17.

On or about March 3, 2017, Attain received an email from Workday notifying Attain that the Agreement would terminate effective May 30, 2017. Compl. ¶ 21. Attain alleges, based on information and belief, that Workday terminated the Agreement because Attain was an independent company in the industry and would not agree to Workday's unreasonable demands and rates for certain projects. Compl. ¶ 22.

Following the termination of the Agreement, "Defendants sought to punish Attain for its independence by making false and misleading statements about Attain to Attain's actual and prospective customers, and to third-party vendors, in an effort to exclude Attain, previously its Partner, from successfully competing in the SaaS and data infrastructure markets." Compl. ¶ 23. For example, Defendants, through Defendant Steele, falsely told Muhlenberg College that Attain could not be a Prime contractor on a deal with a Workday component and that Attain was not capable of handling the project. Compl. ¶ 24. Defendant Steele also made disparaging comments about Attain to Worcester Polytechnic Institute, Brandeis University, and Babson College. Compl. ¶ 23. Attain alleges, on information and belief, that Defendants have falsely made other

disparaging statements to Attain's actual and potential customers and to third parties, including

false statements that Attain had failed in SaaS implementation, that Attain was not a good firm,

and that Attain's officers were not competent. Compl. ¶ 31.

## B.    Procedural Background

On the basis of the allegations summarized above, Attain asserts against Defendants

claims of tortious interference with contract rights, commercial disparagement, and defamation.

In response to Attain's Complaint, Defendants filed the present Motion to Transfer

Venue, seeking to transfer this action to California pursuant to a forum-selection clause and

choice-of-law provision in the Alliance Agreement, which provides as follows:

> Governing Law; Dispute Resolution: This Agreement and any dispute or claim
> arising out of or in connection with it or its subject matter or formation (including
> non-contractual disputes or claims) shall be governed exclusively by, and
> interpreted and construed in accordance with, the laws of California, USA, and
> the parties irrevocably submit to the exclusive jurisdiction of the California
> courts.

Alliance Agreement ¶ 10.9, Defs.' Request for Judicial Notice Ex. 1, ECF No. 15-1.

Defendants contend that this clause "broadly encompasses all of Attain's claims, because

those claims, at minimum, arise in connection with the Alliance Agreement and its subject

matter—*i.e.*, Attain's work and relationship with Workday." Defs.' Mem. Supp. Mot. Transf. 8,

ECF No. 13. Defendants point out that Attain's Complaint contains multiple paragraphs about

the Alliance Agreement, and they argue that "all of Attain's claims cover the same subject matter

found in the Alliance Agreement—*i.e.*, the relationship between Workday and Attain; the duties

and standards that Attain, as a Workday Advisory Partner, needed to fulfill (but failed to); and

the reasons for and consequences of Attain's termination as a Workday Advisory Partner." *Id.* at

9. In short, Defendants contend that "without the Alliance Agreement, this dispute would not

exist." *Id.* Further, Defendants argue that it is immaterial that the alleged tortious misconduct

happened after the termination of the Agreement, because the forum-selection clause applies to "any" claim, without limitation based on the timing of the alleged conduct.

Attain responds that the forum-selection clause does not apply to its claims because, "[s]imply put, Attain does not allege in the Complaint that Defendants breached any contractual duties owed to Attain under the Alliance Agreement, and none of the false or disparaging statements alleged in the Complaint concerned the Alliance Agreement, its terms, or the parties' obligations under it." Pl.'s Opp'n 2-3, ECF No. 16. Further, Attain contends that its claims "do not arise out of and are not in connection with to the Alliance Agreement, because they could have and in fact may have arisen even if the parties had never entered the Alliance Agreement, and the Complaint would still state the claims for relief if Attain omitted the background information regarding the Agreement from the Complaint." *Id.* at 3.[1] Attain also argues that because the forum-selection clause does not include a "survival provision," the forum-selection clause ceased to apply once the Agreement was terminated. Finally, Attain contends that interpreting the forum-selection clause as broad enough to include its claims in this lawsuit would lead to absurd results because, under this interpretation, "any dispute that Attain ever has with Workday, or Robert Steele, is subject to the Alliance Agreement's venue and dispute resolution procedure regardless what facts give rise to the dispute." Pl.'s Opp'n 11.

---

[1]     Attain's brief does not specifically address the question of whether Attain's claims arise out of or in connection with the "subject matter" of the Alliance Agreement, as opposed to the Alliance Agreement itself.

### III.    Analysis

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[A] party may move under 28 U.S.C. § 1404(a) to transfer a case to another federal court based on a valid forum selection clause." *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In such cases, "'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart*, 487 U.S. at 33). A forum selection clause is valid if there has "been no 'fraud, influence, or overweening bargaining power.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (quoting *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12 (1972)).

"Of course, a forum clause will govern only if it applies to the dispute at hand." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (4th ed. April 2018 update). Here, Attain does not challenge the validity of the forum-selection clause, nor does it contend that there are exceptional circumstances to defeat transfer. Rather, Attain contends that the clause does not apply to the claims asserted in this lawsuit because those claims are outside the scope of the clause.

"The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997) (Alito, J.). In other words, the court "applies the principles of contract law" to determine "'whether the claims and parties involved in the suit are subject' to the clause." *Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). "[S]tate contract law, rather than federal common law, governs the interpretation of the forum selection clauses." *Id.* at 183. In order to determine which state's contract law applies, in a diversity case such as this one the court "look[s] to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *See id.*

This Court sits in Pennsylvania, whose courts have adopted Section 187 of the Restatement (Second) Conflict of Laws, and accordingly "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them," in the absence of certain exceptional circumstances, none of which apply here. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Thus, because the Alliance Agreement contains a choice-of-law provision specifying that the agreement "shall be governed exclusively by, and interpreted and construed in accordance with, the laws of California," this Court will apply California contract law to interpret the scope of the forum selection clause in the agreement. "In interpreting a contract under California law, a court must first look to the plain meaning of the contract's language." *See Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 787 (9th Cir. 2008). The Court will therefore interpret the clause according to its plain meaning.

In light of the above considerations, the question at issue is whether, under the plain meaning of the Alliance Agreement, Attain's claims fall within the scope of the Agreement's forum-selection clause, which applies to "any dispute or claim arising out of or in connection with [the Alliance Agreement] or its subject matter or formation (including non-contractual disputes or claims)."

At the outset, it is clear that the claims do not arise out of or in connection with the "formation" of the Alliance Agreement, as the claims have nothing to do with the negotiation or signing of the Agreement. Nor do the claims arise out of the Alliance Agreement itself, as the claims do not implicate the terms of the Agreement or require an interpretation of the Agreement. *See Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010) ("For purposes of a forum selection clause, a claim arises out of a contract when it is necessary to interpret the contract to resolve the dispute."). Rather, as explained below, the clause achieves its broadest reach with respect to those disputes or claims that arise "in connection with" with the Agreement or the "subject matter" of the Agreement, that is, the relationship as established by the Agreement. The Court will therefore consider whether Attain's claims fall within these bounds.

The Court begins by interpreting the phrase "arise in connection with." The Court understands this phrase to be equivalent to the phrase "arise in relation to"—a phrase that was closely examined by the Court of Appeals for the Third Circuit in *Wyeth*. *See* 119 F.3d at 1074–76.[2] In *Wyeth*, the court explained that the phrase "arising in relation to" is broader than the phrase "arising under" or "arising out of," and is not limited to disputes growing out of the

---

2       Because this Court's interpretation of the forum-selection clause is governed by California law, this Court relies on the *Wyeth* court's interpretation of the phrase "arising in relation to" as persuasive authority, not binding authority.

agreement. *See id.* at 1075; *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract."); *Huddleston v. John Christner Trucking, LLC*, No. 117CV00925LJOSAB, 2017 WL 4310348, at *7 (E.D. Cal. Sept. 28, 2017) ("Where a forum-selection clause uses the phrases 'arising under,' 'arising out of,' or similar language, the clause is construed narrowly to cover only disputes 'relating to the interpretation and performance of the contract itself.' . . . .  Where, however, the clause uses broader language, such as 'relating to' and 'in connection with,' courts read the clause more broadly."); *AJZN, Inc. v. Yu*, No. 12-CV-03348-LHK, 2013 WL 97916, at *2 (N.D. Cal. Jan. 7, 2013) (finding that forum-selection clauses embracing "any matter arising out of or in connection with" an agreement "do not require that claims seek to enforce the agreements, or seek remedies under the agreements," but rather only that "claims relate to, or are based on matter in connection with, the agreements").  Further, the *Wyeth* court explained that "[t]he ordinary meaning of the phrase 'arising in relation to' is simple." *Id.* at 1074. To say that a dispute arises in relation to an agreement "is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some 'logical or causal connection'" to the agreement. *Id.* (quoting *Webster's Third New International Dictionary*, 1916 (1971)). Thus, the question is whether Attain's claims have a "logical or causal connection" to the Agreement or to the "subject matter" of the Agreement. The Court finds that they do.

As indicated above, the Complaint includes multiple paragraphs describing the Alliance Agreement, Attain's performance under the Agreement, and Workday's termination of the Agreement. These paragraphs do not simply provide "background information," as Attain

contends. Instead, they are central to Attain's claims. As indicated above, Attain alleges that it

began to work with Workday because of the Alliance Agreement, under which the parties

contracted to "promote each other's Services and/or products." During the course of

performance, Workday tried to micromanage Attain, but Attain insisted on being independent.

Workday became frustrated with this conduct and chose to terminate the Agreement. Workday

then chose to punish Attain for the independence that it had exhibited in the performance of the

Agreement by making disparaging statements about Attain to other parties—which included

statements concerning Attain's ability to handle projects involving Workday components—using

its experience with Attain during the performance of the Agreement to lend credibility to these

statements. In short, the Agreement created the relationship between the parties, the breakdown

of which caused the alleged tortious statements, which in turn related to the subject matter of the

Agreement. Attain's claims thus have a "logical or causal connection" to the Agreement and the

subject matter thereof.

    With respect to Attain's contention that the forum-selection clause does not apply without

a "survival provision," Attain has not cited to any principle of California law that prevents a

forum-selection clause from surviving the termination of the contract without an express

"survival provision." Rather, "[t]he scope of the claims governed by a forum selection clause

depends [upon] the language used in the clause" and can be discerned only by considering the

specific language of that clause. *See Huddleston*, 2017 WL 4310348, at *7. Here, paragraph 6.3

of the Agreement provides that "[u]pon expiration or termination of this Agreement for any

reason, those provisions of this Agreement which by their nature should survive termination shall

survive termination, including, without limitation, ownership provisions, disclaimers,

indemnities and limitations of liability." Although this provision does not expressly identify the

forum-selection clause as among those clauses that "by their nature should survive termination," in view of the broad nature of the clause, and the absence of any language expressly indicating its termination, the Court finds that the clause survives termination.

Finally, Attain is incorrect that this interpretation of the forum-selection clause would lead to absurd results where every conceivable claim between the parties would be included under the clause. As the U.S. Supreme Court has observed in a different context, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy," then it would never end, "for '[r]eally, universally, relations stop nowhere.'" *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (quoting Henry James, *Roderick Hudson* xli (New York ed., World's Classics 1980)). But sensible principles of contract interpretation prevent forum-selection clauses such as this one from reaching the ends of the universe. In any event, the claims at issue in this case are nowhere near the "furthest stretch" of the meaning of the word "connection": Attain's claims result from Workday's alleged dissatisfaction with Attain's performance of the Agreement, Workday's termination of the Agreement, and Workday's decision to retaliate against Attain for its performance.

## IV.    Conclusion

For the reasons set forth above, Workday's Motion to Transfer Venue is granted. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge